This is the safety needle case that's here on summary judgment of non-infringement. That's the primary issue that we have. In deciding summary judgment of non-infringement, unlike the jury, it's the jury that has the final say. In this case, the judge had to give deference to our evidence, draw all inferences in our favor, and believe all our evidence. In fact, we think what the judge actually did below was the opposite of that. Let me start with the retraction issue. That's the issue where it's required by the asserted claims, claims 13, 19, and 20, that the needle retract into its guard. And on that issue, there's two aspects of it. One part of it is the physical structure of the device. Can the physical structure of Becton Dickinson's device do that retraction step? Can I just direct you to the prior art in this case? Yes. I'm having a hard time seeing the difference between the prior art and the sliding guide issue in this case. In all of them, the needle is immovable. That's the distinguishing characteristic for which you relied on to distinguish the prior art to get your patent in the first place, is it not? That's part of it. That relates to the claim issue, the claim limitation called slidably receiving, which this court construed in the first appeal. That meant that the guard could slide in both directions over the needle, and the needle could slide in both directions to the guard. Well, our court talked about that and described it as that there's no backward movement of the needle into the stationary guard. Is that correct? That would not be slidably receiving, and that's important as to retraction, because in order for retraction to occur, the needle must slide backwards into the stationary guard. The guard must be stationary, the needle must move backwards into it. The distinction that was made in that prior art dealing with Smith and Bayless was this, is that their guards could move forward over the needle and protect the needle tip, but the structure was such that the guards could not be stationary and the needle be pulled backwards into the guard. They could not retract based on the structure of the needles, therefore they did not need... Are you saying immovable means that it's fixed with respect to the body of the syringe? Forget about the guard now. That's what immovable means, right? When we're discussing the prior art? I'm not quite following the court... Immovable means that it's fixed, the needle is fixed with respect to the body of the syringe. No, it does not. That's not what immovable means. No, that's not what it is. It doesn't matter what's attached to the needle here. The needle by itself has a specific structure that must meet some of these requirements of the claims. The syringe is not in the claims. The needle is sold not attached to a syringe. Various things can be attached to these needles and are, including for the preferred embodiment, there's something attached to the needle in that. All the art in the case is attached to something, including syringes here. So the issue of immovability doesn't deal with physically what happens to the needle in terms of the syringe. But Mr. Skinion, following up a little bit on my colleague's point, you're not retracting that needle into the body, which is what's required by the claim. Yes, you are. You're retracting the needle and then the body snaps around it. No, that's not correct. Okay, well tell me why it's not. I did do it a couple times with the samples you gave us. There's two ways to use the needles. I understand that. The retraction method is this. Even if you do it, I'm not sure which is one or two, but you hold the guard against the skin and you retract the needle, you're not retracting the needle into anything, are you? You're just retracting the needle and then the body snaps over the top. No, because that's exactly what retraction is in the patent. In the patent, what happens is you make the injection to the patient. Can I clarify something before? As I understand it, we're dealing with a method claim. Your contention is that the method claims infringe only in the situation where you push the guard forward before retracting the needle. If you retract the needle and then push the guard forward, you're not claiming that's infringement, right? I think that's not quite right, but let me see if I can... But there is a non-infringement use here, yes. If you remove the needle from the patient and activate the guard by pushing the guard forward over the needle, that does not infringe these claims. Okay, so it's only in this procedure where you push the guard forward as you're holding the guard against the body. So there's no retraction in where you remove the needle first and then put the guard over? There is not. It's only when you inject exactly as explained in the preferred embodiment. They make the injection, they hold the guard against the patient's skin, and then they retract the needle from the patient. And in doing so, they're retracting the needle tip into the guard. But in the patent, and it's very explicit in the picture, you see the needle coming back through the center of the guard. It is being retracted literally into the body of the guard. That's correct. We're talking about the guard body. That's correct, and that's exactly what our evidence... How does that happen with the accused? It's exactly what happens with the accused, and the evidence below was unchallenged on that point. That was our expert describing how that works, and in context with BD's videos, they submitted to the FDA. And not one word of that was challenged below. Again, this is a summary judgment issue. How that works is, what they do is make the injection to the patient. They activate the guard. The needle's still in the patient. The guard pushes up against the patient's arm because of the spring. Now, there's two things stationary here, the patient's arm and the guard. At that point, because the needle can slide, it slides out of the patient and into the guard. And when it does, it does exactly the same thing as in the preferred embodiment. It gets into the guard because it's retracting into the guard and retracting out of the patient. In the preferred embodiment, the method would be infringed both when the needle is pulled out of the patient and then the guard is activated, and when it's activated at the same time as the withdrawal, right? Both of those are covered under the preferred embodiment of the PAC, correct? The preferred embodiment only discloses the latter one, where you're activating it as it comes out of the patient's arm right then at that time, and that was the court's construction of immediately, simultaneously with withdrawal from the patient. And that's what this procedure does. But what I'm having difficulty in understanding is why this method claim involves retraction when the guard is activated as it's being withdrawn, but does not involve retraction when the thing is done after it's withdrawn. Well, in terms of the BD device, when you talk about activation of the guard, the claims themselves, and this court's construction of the claims, deals with immediately, simultaneously with withdrawal from the patient. Not about immediately, but I'm talking about retraction. The thing operates in exactly the same way, and you're saying, well, there's retraction when it's done as it's being withdrawn from the patient's arm, but it doesn't involve retraction if it's done after it's withdrawn from the patient's arm. Forget about immediately. You're making that distinction based on the retraction on the patient. The difference is, is after they withdraw it from the patient, the guard was never activated. Well, the needle was in the patient. The patient's there, the needle's here, and they activate the guard. I don't think you're really addressing what my concern is. My concern is why is it retraction when it's in the patient, but not retraction when it's outside the patient? That's what I'm trying to respond to. It's not retraction when it's outside the patient, because when it's outside the patient and activated, it's pushed forward. The guard is moving towards the needle tip. The spring takes it all the way to the needle tip. It's the guard that moves forward over the needle tip. It's not the needle that moves backwards into the guard in that method. That's why the out-of-the-arm effort… The mechanics are exactly the same. The mechanics are exactly the same. So, the mechanics are the same, but in one case it's retraction and in the other it's not. I don't get it. No, it's not retraction because it's a question of what's moving. What's moving? Under the court's constructions that I'm dealing with, including the immediate construction, I'm required to show what happens simultaneously withdrawal from the patient. Simultaneously with withdrawal from the patient, that second method… But that's not what I'm talking about. I'm talking about the retraction step. Retraction means one thing when it's in the patient and it means something else when it's outside the patient. I don't think it does. You have retracted the needle from the patient to get the needle out of the patient, but that's not the retraction of the claims. The retraction of the claims only refers to the relative movement of the guard, which is stationary, and the needle going back into it. And that's what our evidence was that they do in that method that they gave to the FDA to show them that we need a method that shows zero exposure time for the needle. And that is when the needle is retracted into the guard as the guard is sitting stationary against the patient. It's the needle that retracts in that one, but it's not the needle that retracts in the other method of use. The issue there was that what we did was show the court through BD's videos that how that retraction worked as met the claims. And the district court dismissed that evidence. BD did not challenge the evidence. The district court dismissed that evidence saying that those things were before the patent issued and therefore weren't infringement. Well, we can see they're not infringement, but it shows how the claims are met by those devices, which are unchanged. There's no evidence there's any change in the device and how it works. Can I just ask you a quick process question before your time runs out? Yes. And that is, you make the law of the case argument with respect to some of these issues. Yes. Is that argument made with respect to the retractable or simply with respect to the immediate? No, it's not a retractable because retraction here was not an issue that this court decided because it was agreed on claim construction. So that's not an issue with law of the case. They can raise the retraction one. They cannot raise the new claim construction issues in the case as well. Thank you. Thank you, Mr. Skindin. Ms. Pirazzolo. Thank you, Your Honor. May it please the court. To obtain the claims it is asserting here, MBO repeatedly distinguished its retractable needle from prior art devices with guards that moved over a fixed needle. And for this reason, this court has already held that MBO clearly and unmistakably surrendered claiming a guard body that moved relative to a fixed needle and invalidated the broad reissue claims of this patent that did not require retraction. In the method where you hold the guard against the body, however, you are pulling that needle back through the guard. Is that retracting into it? That is not retraction, Your Honor, for these reasons. Although retraction wasn't specifically construed by the court, it was described as backwards movement of the needle into a stationary guard. With the BD safety glide device, the guard is not stationary. It must be moved forward to cover the fixed needle, even in that in-arm retraction method. As illustrated at page 19. I'm trying to visualize. If I'm holding the guard right against the body and pulling the needle back through it, why is the guard moving again? Well, before you got to that point, you had to move the guard. Even if the needle was in the patient's arm, you have to get the guard to the over-center spring position, otherwise the device won't operate. So the guard in BD's device is not stationary. It must be triggered by the user during operation. Is there anything in the claim that says the guard has to be stationary? There is. It just says it's retracted into the body of the guard. That's correct, Your Honor. But the issue here is that the way MBO obtained these claims, they distinguished their invention over the Smith and Bayless devices. I've seen those. Yes, and Smith is at page 11. In those, you pull the needle out, hold it up in the air, and then push forward a phalange that snaps over the top. That's not happening in this situation where the guard is staying against the arm of the patient and the needle is being retracted back through it. Well, there was no discussion of how the Smith and Bayless devices were being used during prosecution, and MBO distinguished both of those devices in three ways that are inconsistent with its claims against the BD device in this case. In distinguishing the invention over Smith, MBO specifically said, and this was referred to in this court's second opinion in this case, that Smith had the usual needle fist to and extending from a syringe barrel and asserted that the needle, therefore, was not slideably received in the barrel. And this is important because just as in Smith, in the safety glide device, the needle extends from a conventional syringe barrel and is fixed. Second, MBO distinguished Smith on the grounds that the Smith device required specific manipulative efforts by the operator of the device to personally The point here is that with both Smith and Bayless, you have to take the needle out of the patient and run the risk of some kind of accident before you would activate the protection. With both your device and the claimed invention,  without running the risk of exposing the needle at any point. Why isn't that the critical distinction here? Well, Your Honor, because I don't think it's a fair inference from Smith and Bayless that you couldn't do the in-arm activation with those devices. MBO didn't distinguish those devices on that ground. They operate in the very same manner that the safety glide device operates. So, to look at the Smith device with the L-shaped guard, if you put the needle in the patient and triggered the L-shaped guard before the needle was withdrawn from the patient. But to get over the tip, you have to have the needle outside of the patient. But that's the same with the safety glide device. You would assume with Smith, the L-shaped guard would be pressed against the skin and therefore stationary in the same manner that MBO claims the guard in the BD device is stationary. Which we dispute because the operator must trigger the guard in the safety glide device. In fact, that was the... Are these factual matters that need to be explicated by trial? No, Your Honor. Because the distinctions that were made during the file history were quite clear. The needles in Smith and Bayless were fixed. And they were talking about fixed in the barrel of a syringe or fixed to the body of the device. Which is a source of some confusion to me. Because here we're talking about movable. We're talking about movable into the guard. And it seems to me, reading the prosecution history of Smith and Bayless, they were talking about the body of the syringe and whether or not the needle is movable with respect to the body of the syringe. Is that a distinction with a difference? Well, they were talking about both how the guard operated and that the user would have to trigger it forward. But also, the file history does refer, when MBO described its needle, as retractable to the fact that the needles were fixed to the body of the syringe. With both Smith and Bayless, and I talked about Smith, with Bayless it says a needle that is fixed to the body support chamber. So MBO distinguished its retractable needle from needles that were fixed to the syringe or the body support chamber. So they distinguished their device on the fixed needle versus a retractable needle. The need to manually trigger the guard. And also, for a third reason, that the Smith device, and this goes to your point, Judge Rader, may be fully withdrawn from the patient's flesh by an inattentive or rushed operator in exactly the unsafe position with the needle point exposed. That's the same distinction that admittedly occurs with the BD device, that the operator may withdraw the needle from the patient's skin prior to activating the safety guard. And those three points of distinction were used to obtain the claims here, with this retraction being the central method of ensuring that the needle, the sharp tip of the needle was not exposed prior to activation of the device. How long has this case been going on? It was filed in 2003, Your Honor. There are two other grounds on which the district court's opinion may be affirmed in this case. One, the second reason that BD is entitled to summary judgment of non-infringement is that the safety glide device does not immediately and positively preclude needle stick injury as required by the asserted claims. Immediately means simultaneously, according to this court, with the needle's withdrawal from the patient. And the court relied on the distinctions over Smith in coming to that construction of the term that immediately was an essential feature of this invention. So to prove infringement, MBO is required to show both direct infringement by a person who practiced in this manner and that BD induced infringement of these method claims. And BD did not present evidence of that before the district court. So on the evidence that the safety glide, there was no evidence of the safety glide ever having been activated prior to removal of the device from the patient. To the contrary, the evidence was that BD instructs users to activate the device after withdrawal of the needle from the patient. These were in instructions that were before the district court. In addition, to overcome the prior art... Does the body include the splatter guard at the end? The splatter guard, we don't think it's material as to whether the splatter guard is included in the body, but no, the body is defined by the aperture into which the needle goes. You say no, I think they say yes. Is that a claim construction issue or an infringement issue? Or in reality, it's both, isn't it? I think it's both, Your Honor. We engage in this little fiction that claim construction and infringement are different things, but they never really are. How do we resolve... Of course, if it's claim construction, though, it's a legal issue, and if it's infringement, it's factual. So if it's, as you suggest, both, what do we do with it? Do we send it back for the factual component of this claim construction slash infringement article argument, or do we deal with it as a legal matter? You may deal with it as a legal matter, Your Honor, because to the extent it's factual, those facts are undisputed. The device was an evidence. There's no dispute over the structure of the device. And there's no factual dispute to address on whether the flange goes over the forward surface of the body or not. The district court had everything it needed, and this court has everything it needs to resolve that issue as a matter of undisputed fact. The briefs both have pictures where the court can see the location of the flange relative to the body, and we've cited the claim limitation over, which can be construed according to its plain meaning, over the front surface of the guard. So we think this court can resolve it without sending it back to the district court. Did the court have any other questions about the retraction issue or any other issue? Then we will rest on our briefs. Thank you. Thank you. Mr. Skinion, you have a little over two minutes still. Yep. Could you help me with one thing? In reading the specification, I see the specification as referring to the pulling of the needle out from the patient's arm as withdrawal of the needle and not retraction, correct? I think they're synonymous. Withdrawal and retraction, yes. How do I know that? Where does the specification say that? Because I see the specification referring to withdrawal from the arm, and then it refers to retraction of the needle into the body. Because that's what we relied on in our marking brief as to the meaning of retraction, which BD accepted, and that's why it was not before the court in the first appeal. That withdrawal of the needle from the patient's arm is retraction. But where does the specification tell me that? Where does it tell me that? Well, it does refer to retracting the needle, but in the specific embodiment that you're talking about, I'm not sure where that is. It may refer to it as withdrawal, but when you're talking about the situation where a guard is against and stationary to the arm of the patient here, that is retraction as in the claims. You can withdraw the needle, and technically that's retraction, and activate it later, but that's not the retraction in the claims. The retraction in the claim has to occur simultaneously with the needle's withdrawal from the patient. Let me just address two things very quickly. So you can have a retraction that takes place outside of the patient's arm? If you want to look at pulling the needle out completely and then activating it later, yes, but that's not the retraction that's in the claim. That's correct. It's not? It's not. If they activate it after it's been pulled from the patient and then activate it, that is not what's called for in the claim and not what we say infringed. It's the other method that infringes. There may be an apportionment here as to damages, but there's another method that infringes, and that's when it's left in. Just quickly, as my time's almost up, the instructions that were referred to here on this as instructing that the user only pull the thing out and then use it later, activate it later, is instructions that only existed in this case as of 2007. We've asked them repeatedly to identify where these things existed before, and they have not done so. And the issue on the body is a fact issue. It's a question of where the label is for what that front surface is, and parties disagree as to where that is. We say it's in the body and the phalangistal external. They say it's after, outside, outside the splatter guard, and so that is a fact issue, and it should be a fact issue for the jury.  Thank you. Our next case is...